Diana Rhodes, WY #5-2734
Traci Rivinus, WY #6-3920
Rhodes Law Firm, LLC
2015 Warren Avenue
Cheyenne, WY 82001
Telephone: 307.634.4444
Facsimile: 307.220.0280
diana@drhodeslaw.com
traci@drhodeslaw.com

## UNITED STATES DISTRICT COURT
### for the
### DISTRICT OF WYOMING

| | |
|---|---|
| KARLA RIDGEWAY, ) | |
| ) | |
| **Plaintiff,** ) | |
| vs. ) | Civil Doc. No. 18-CV-40-S |
| ) | |
| MAHESH KARANDIKAR, M.D., and CASPER ) | |
| MEDICAL CENTER, LLC, d/b/a/ MOUNTAIN ) | |
| VIEW REGIONAL HOSPITAL AND CLINIC, ) | |
| ) | |
| **Defendants.** ) | |

### COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Karla Ridgeway, by and through her counsel, Diana Rhodes, Rhodes Law Firm, LLC, for claims for relief against defendants Mahesh Karandikar, M.D. and Casper Medical Center, LLC, d/b/a Mountain View Regional Hospital and Clinic, states and alleges upon information and belief as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff, Karla Ridgeway, is currently a resident of Larimer County, Colorado.

2. At the time of the medical care complained of herein, Plaintiff lived and worked in Casper, Wyoming, and was a Wyoming resident and citizen.

3. As a result of her injuries as alleged herein, Plaintiff now resides in a skilled nursing facility in Larimer County, Fort Collins, Colorado.

4. Plaintiff's Power of Attorney is her daughter, Gabrielle Keith, who resides in Jefferson County, Lakewood, Colorado.

5. Plaintiff is informed and believes, and thereon alleges, that defendant Mahesh Karandikar, M.D. is a physician licensed to practice medicine and neurosurgery in the State of Wyoming, who conducted a medical practice at Defendant Casper Medical Center's (hereinafter "CMC") facilities.

6. At all times material to this action, Defendant Karandikar was engaged in the business of practicing medicine in the State of Wyoming, as described above.

7. Plaintiff is informed and believes, and based thereon alleges, that Defendant CMC is doing business as Mountain View Regional Hospital and Clinic as a community hospital facility that advertises its services to include neurosurgery.

8. At all times material to this action, Defendant CMC was engaged in the business of for-profit hospital and surgical services. As a consequence, Defendant CMC is responsible for any liability and damages that result as a direct consequence of its own negligence, and for any liability and damages that flow from the misconduct of its agents, employees, servants, and apparent agents.

9. At all times relevant herein, agents, employees, servants, and apparent agents of the Defendant CMC acted on behalf of themselves and on behalf of Defendant CMC.

10. The events giving rise to this action occurred in Natrona County, Wyoming.

11. The amount in controversy in this action, exclusive of costs and interest, exceeds seventy-five thousand dollars ($75,000).

12. A Notice of Claim was properly and timely executed to the Medical Review Panel of the State of Wyoming, pursuant to Wyo. Stat. § 9-2-1519. The Order of Dismissal was entered by the Medical Review Panel on January 30, 2018, and is attached as **Exhibit 1**. Pursuant to the Medical Review Panel Act, the Order of Dismissal provided Plaintiff with the availability of legal action, and this Court has jurisdiction.

13. Jurisdiction and venue are therefore proper in this Court pursuant to 28 U.S.C. §1332 (a)(1) and (2) and 28 U.S.C. § 1391(a), and Plaintiff's satisfaction of the procedural prerequisites for filing suit pursuant to Wyo. Stat. § 9-2-1519.

## GENERAL ALLEGATIONS

14. Plaintiff realleges and incorporates by reference paragraphs 1 – 13 as if fully set forth herein.

15. In October, 2015, Karla Ridgeway began to suffer from episodes of weakness, paraesthesia, and balance problems.

16. On October 16, 2015, Ms. Ridgeway underwent an MRI of her brain which revealed a colloid cyst in her 3rd ventricle, and an MRA of her head without contrast which revealed a possible 6 mm aneurysm versus artifact on an insular branch of her right middle cerebral artery.

17. On October 28, 2015, Defendant Dr. Karandikar performed a neurosurgical evaluation on Ms. Ridgeway.

18. On November 12, 2015, Dr. Karandikar performed a right-sided craniotomy for endoscopic removal of the colloid cyst on Ms. Ridgeway.

19. According to the medical records, Ms. Ridgeway showed no evidence of hydrocephalus at the time of the November 12, 2015 surgery.

20. During the surgery on November 12, 2015, Dr. Karandikar failed to remove any part of the colloid cyst, nor did he send any specimen to pathology.

21. Dr. Karandikar did not report to Ms. Ridgeway's family that he failed to remove the cyst or send any specimen to pathology at the time of the November 12, 2015 surgery.

22. Post-operatively, Ms. Ridgeway was difficult to arouse, had altered mental status, unequal pupils, and a droopy eyelid.

23. Dr. Karandikar was aware of Ms. Ridgeway's post-operative symptoms from the surgery of November 12, 2015, but gave no orders for additional testing or care to be provided to Ms. Ridgeway.

24. On November 15, 2015, a post-operative CT scan was obtained on Ms. Ridgeway, and the findings are reported as "a punctate focus of hemorrhage in the vicinity of the colloid cyst seen on previous examination," as well as "some parenchymal hemorrhage and associated edema in the right ventral thalamus, consider contrast-enhanced brain MRI for definitive characterization."

25. Defendant Karandikar perpetuated the falsehood that he had performed the correct surgery on Ms. Ridgeway when he dictated her discharge summary on November 18, 2015, indicating, *inter alia*, that "the neuroendoscopic colloid cyst removal was performed," and that following that surgery, "the patient was taken in stable condition to the PACU without incident."

26. On November 18, 2015, on her 5th post-operative day, Ms. Ridgeway was discharged from Defendant CMC to a skilled nursing facility.

27. The skilled nursing facility noted on its initial examination of Ms. Ridgeway that she was unable to voluntarily open her right eye, had left-sided weakness and complaints of fatigue.

28. Ms. Ridgeway was subsequently examined by a neurosurgeon at Wyoming Medical Center, and on November 28, 2015, the neurosurgeon ordered a new head CT scan that reported to show a 6 x 6 mm high attenuation oval-shaped lesion in the expected location of the foramen of marrow, noting that differential diagnostic considerations included a colloid cyst.

29. The neurosurgeon documented that the CT was unusual in that it showed a "significant hypodensity in her right thalamus which could be the scope of trauma if the endoscope was placed a little too laterally or could be an infarct if a vascular event happened. If an adverse vascular event happened intraoperatively, some of these findings could also explain her third nerve palsy."

30. Throughout Ms. Ridgeway's residency at the skilled nursing facility, her neurological deficits, including confusion, hallucinations, visual problems, inability to read at times, inappropriate behavior, balance problems, and cognitive decline are documented.

31. On December 21, 2015, Ms. Ridgeway became unresponsive at the skilled nursing facility and was taken to the Emergency Department at Wyoming Medical Center (WMC).

32. A CT scan was performed on December 21, 2015 at WMC due Ms. Ridgeway's altered mental status. The CT scan revealed "a 7 mm hyperdense lesion is noted again at the region of the foramen of Monro. This lesion appears slightly larger and likely represents a

colloid cyst causing partial obstruction to the outflow of cerebrospinal fluid from the lateral ventricles."

33. The WMC Emergency Department physician noted the colloid cyst in his Assessment and Plan: "Status post craniotomy with endoscopic resection of colloid cyst in November 2015 that resulted in right third nerve palsy and interventricular hemorrhage. Right now, there is no interventricular hemorrhage. Still the cyst is present and enlarged ventricles. I will follow up with neurosurgery recommendations and continue to monitor."

34. Ms. Ridgeway was transferred from WMC to Mountain View Regional Hospital/CMC to be under Dr. Karandikar's care due to concern of hydrocephalus. Dr. Karandikar evaluated Ms. Ridgeway and the CT scan taken at WMC.

35. Dr. Karandikar concluded after his assessment on December 21, 2015, that there no change in Ms. Ridgeway, and sent Ms. Ridgeway back to the skilled nursing facility with new medication orders.

36. Dr. Karandikar never told Ms. Ridgeway nor her family the colloid cyst was still present in her brain.

37. Ms. Ridgeway continuously followed up with Dr. Karandikar after the November 12, 2015 surgery.

38. On February 3, 2016, Ms. Ridgeway's symptoms continued to worsen. Dr. Karandikar ordered a CT to determine if Ms. Ridgeway had hydrocephalus.

39. On February 24, 2016, Dr. Karandikar examined Ms. Ridgeway and noted that the CT "is quite good and stable in terms of her ventricular size…" Dr. Karandikar ordered that Ms. Ridgeway continue physical therapy and return in five weeks.

40. On March 9, 2016, Ms. Ridgeway returned to see Dr. Karandikar due to severe symptoms including, but not limited to, decreased consciousness.

41. Dr. Karandikar ordered another head CT which demonstrated a 7 mm colloid cyst in the anterior recess of the third lateral ventricle, as well as hydrocephalus.

42. Dr. Karandikar updated the history and physical of Ms. Ridgeway, and continued to perpetuate the falsehood that he had previously removed Plaintiff's colloid cyst.

43. Despite prior findings on examination and imaging studies to the contrary, Dr. Karandikar documented that Ms. Ridgeway's "condition improved substantially until recently when she began to appreciate the return of headaches and dizziness," and that "neurologically, she has no deficits."

44. The evening of March 9, 2016, Defendant Dr. Karandikar performed emergent surgery to enlarge Ms. Ridgeway's third and lateral ventricles and to place a VP shunt to manage the hydrocephalus.

45. On March 10, 2016, a post-op CT scan continued to demonstrate the colloid cyst that Dr. Karandikar claimed he removed on November 12, 2015.

46. Dr. Karandikar never informed Ms. Ridgeway nor her family that he did not remove the colloid cyst and that it remained in her brain

47. On May 25, 2016, Ms. Ridgeway was admitted to the University of Colorado Department of Neurology for right third (3rd) nerve palsy, hydrocephalus complication of colloid cyst. A CT scan taken that day redemonstrated a 7.5-8 mm colloid cyst.

48. Ms. Ridgeway and her family were informed for the first time of the continued existence of the colloid cyst during her May 25, 2016 stay at the University of Colorado Hospital.

49. As a direct and proximate result of the negligence of the Defendants, and each of them, Karla Ridgeway suffers severe and permanent injuries.

## FIRST CAUSE OF ACTION
### (Negligence Against All Defendants)

50. Plaintiff incorporates and re-alleges the foregoing paragraphs as if fully set forth herein.

51. Defendant Karandikar failed to exercise the degree of skill, care, caution, diligence and foresight exercised by and expected of physicians practicing in his specialty under the same or similar circumstances.

52. Dr. Karandikar negligently performed surgery on Karla Ridgeway when he failed to remove a colloid cyst from her brain demonstrated by imaging.

53. Dr. Karandikar failed to inform Karla Ridgeway that he neglected to remove the colloid cyst.

54. As a direct result of Dr. Karandikar's actions and inactions, Ms. Ridgeway suffered severe injuries.

55. Defendant, Dr. Karandikar was negligent, and such negligence includes but is not limited to the following:

   a. Failed to honestly document the procedure he performed on Ms. Ridgeway, thereby creating misdirection and confusion for her subsequent care providers, contributing to her injuries and damages;

   b. Failed to send the specimen(s) removed from Ms. Ridgeway's brain to pathology for accurate identification;

   c. Failure to inform Ms. Ridgeway that he neglected to remove the colloid cyst;

    d. Failed to remove any part of the colloid cyst from her brain that was the stated purpose of the operation;

    e. Failed to timely identify hydrocephalus on post-operative CT scans;

    f. Failed to timely treat hydrocephalus;

    g. Failed to identify complications and treat complications caused by the original surgery;

    h. Failed to perform adequate and timely post-operative evaluations and provide adequate care for the brain injury he caused during the surgery.

56. As a direct and proximate cause of the acts and omissions of Defendant Dr. Karandikar, Karla Ridgeway was caused and permitted to retain the colloid cyst in her brain that Dr. Karandikar performed surgery to remove, causing additional complications and injuries.

57. As a direct result of the negligence of Dr. Karandikar, Karla Ridgeway suffered injuries and damages including, but not limited to: brain damage; 3rd nerve palsy; dysarthria/cognitive dysfunction; chronic post-operative pain; exacerbation of chronic pain and fibromyalgia; ptosis; brain hemorrhage; severe headaches; hydrocephalus, inability to work, pain and suffering, emotional stress and other non-economic injuries, as well as economic losses, including past and future lost wages and medical expenses, general, and special damages, and exemplary damages, in an amount that will be proven at trial.

58. Defendants' Hospital staff, employees and agents deviated from the standard of care required for Karla Ridgeway.

59. As a direct result of the negligence of Defendant CMC, by and through its agents, Karla Ridgeway suffered injuries and damages including brain damage, hydrocephalus, inability to work, pain and suffering, emotional stress and other non-economic injuries, as well as

economic losses, including past and future lost wages and medical expenses, and general and special damages in an amount that will be proven at trial.

WHEREFORE, Plaintiff requests that judgment be entered in her favor and against Defendants CMC and Karandikar for damages in such amount as the trier of fact determines to be just and proper, for Defendants' said misconduct and to dissuade them and others similarly situated from engaging in similar misconduct in the future; for costs of this action; and for post-judgment interest costs, for exemplary damages, attorney fees, expert witness fees and such other and further relief as this Court deems just and proper in these circumstances.

## JURY DEMAND

**Plaintiff hereby requests a jury of six (6) for the trial of the matter.**

DATED this 2nd day of March, 2018.

Karla Ridgeway

_____
Diana Rhodes, Esq.  #5-2734
Rhodes Law Firm, LLC
2015 Warren Ave.
Cheyenne, WY  82001
(307) 634-4444
diana@drhodeslaw.com

BEFORE THE MEDICAL REVIEW PANEL
OF THE STATE OF WYOMING

| | | |
|---|---|---|
| IN THE MATTER OF THE CLAIM OF<br>KARLA RIDGEWAY, | )<br>)<br>) | Jan. 30, 2018 |
| Claimant, | )<br>) | |
| v. | )<br>) | MRP 17-33 |
| MAHESH KARANDIKAR, M.D.; and<br>CASPER MEDICAL CLINIC d/b/a<br>MOUNTAIN VIEW REGIONAL HOSPITAL,<br>Respondent. | )<br>)<br>)<br>)<br>) | |

## ORDER OF DISMISSAL

THIS MATTER comes before the Director of the Medical Review Panel pursuant to W.S. § 9-2-1519(e) and the Medical Review Panel Rules, adopted November 21, 2005.

A claim by Karla Ridgeway, by and through her attorneys, Diana Rhodes, Traci Rivinus, Isobel Thomas, and Jennifer Keel, was filed with the Medical Review Panel on November 8, 2017.

Notice of the claim was served upon Mahesh Karandikar, M.D. and Casper Medical Clinic on November 13, 2017.

On January 8, 2017, Casper Medical Clinic, by and through Timothy Stubson and Amanda Hunkins Newton, submitted their "NOTICE OF WAIVER OF MEDICAL REVIEW PANEL PROCEEDINGS BY CASPER MEDICAL CLINIC."

On January 17, 2017, Dr. Mahesh Karandikar, by and through Corrine Rutledge and Erin A. Barkley, submitted his "WAIVER OF FURTHER MEDICAL REVIEW PANEL PROCEEDINGS BY RESPONDENT MAHESH KARANDIKAR, M.D."

The Director finds that the filing of a waiver in lieu of an answer to the claim authorizes the Director to issue an order authorizing the claimant to immediately pursue the claim in a court of competent jurisdiction, pursuant to W.S. § 9-2-1519(e).

NOW, THEREFORE, IT IS ORDERED, that the Claimant has complied with the requirements of the Wyoming Medical Review Panel Act, W.S. § 9-2-1513 et. seq.; that no further action or proceeding shall take place with this claim, and that in particular the Claimant is not required to file the statement of an expert witness; and that the Claimant is authorized to immediately pursue the claim in a court of competent jurisdiction. Pursuant to W.S. § 9-2-1518(a), this dismissal constitutes the final decision of the Medical Review Panel, and the tolling of the applicable limitation period shall begin to run again thirty (30) days after the filing of this decision.

EXHIBIT 1

DONE this 30th day of January, 2018.

_____
Eric A. Easton, Director #5-2176
Medical Review Panel

CERTIFICATE OF SERVICE

I, Eric A. Easton, do hereby certify that a true and correct copy of the foregoing ORDER OF DISMISSAL was served upon the parties by depositing a true and correct copy in the U.S. mail, postage prepaid this 30th day of January, 2018, to the following:

Diana Rhodes
Traci Rivinus
Rhodes Law Firm, LLC
2015 Warren Ave.
Cheyenne, WY 82001

Isobel Thomas
Jennifer Keel
Tomas Keel & Laird
50 S. Steele Street, Suite 450
Denver, CO 80209

Timothy Stubson
Amanda Hunkins Newton
Crowley Fleck
111 West 2nd Street, Suite 220
Casper, WY 82601

Corinne E. Rutledge
Erin A. Barkley
Lathrop & Rutledge, P.C
P.O. Box 4068
Cheyenne, WY 82003

_____
Eric A. Easton, Director #5-2176
Medical Review Panel