Corinne E. Rutledge, #4-0697
J. Kent Rutledge, #5-1392
Meri V. Geringer, #6-3808
Whitney D. Boyd, #7-6080
LATHROP & RUTLEDGE, P.C.
1920 Thomes Ave., Suite 500
P.O. Box 4068
Cheyenne, WY 82003-4068
307-632-0554
307-635-4502 (facsimile)
crutledge@lr-law.org
krutledge@lr-law.org
mgeringer@lr-law.org
wboyd@lr-law.org
*Attorneys for Defendant Karandikar*

Timothy M. Stubson, #6-3144
Amanda Hunkins Newton #6-3460
CROWLEY FLECK, P.L.L.P.
111 W. 2nd Street, Ste. 220
Casper, WY 82601
307-265-2279
307-265-2307 (facsimile)
tstubson@crowleyfleck.com
anewton@crowleyfleck.com
*Attorneys for Defendant Casper Medical Center*

## UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF WYOMING

| | | |
|---|---|---|
| **KARLA RIDGEWAY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil No. 18-CV-40-S** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **MAHESH KARANDIKAR, M.D. and** | ) | |
| **CASPER MEDICAL CENTER, d/b/a** | ) | |
| **MOUNTAIN VIEW REGIONAL** | ) | |
| **HOSPITAL AND CLINIC** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

---

### JOINT DEFENSE MOTION TO STRIKE EXPERT DESIGNATIONS
### AND PRECLUDE TESTIMONY

---

Come now Defendant Mahesh Karandikar, M.D. , by and through his counsel, Lathrop & Rutledge, P.C. and Casper Medical Center, d/b/a Mountain View Regional Hospital and Clinic ("MVRH") by and through its counsel, Crowley Fleck, P.L.L.P., and submit the following joint motion to strike Plaintiff's expert witness designations and preclude testimony.

## Background

1.      This is a medical negligence case with which this Court is well familiar; thus, Defendants will not reiterate the facts and background herein.

## Impermissible Legal Opinions

2.      On May 15, 2019, Plaintiff filed her expert witness designations as required by Fed.R.Civ.P. 26(a)(2)(B) and this Court's order dated April 22, 2019. (Doc. 39).  Included in her designations are the identification and report of G. Jeffry Poffenbarger, M.D., a neurosurgeon who identifies himself as having "advanced experience and training in minimally invasive spine surgery, radiosurgery, and neurotrama."  (Doc. 44-5.)  Dr. Poffenbarger is Board Certified and has worked as a neurosurgeon in Cody, Wyoming since 2014.  Prior to that, beginning with a neurosurgical residency at Walter Reed Army Medical Center in 1995, Dr. Poffenbarger has worked as a neurosurgeon in various facilities across the country and for the United States military, to include in Baghdad, Iraq during combat.  (*Id.*).  He is licensed to practice medicine in Virginia (inactive), Texas, and Wyoming.

3.      In Plaintiff's designation of Dr. Poffenbarger, she indicates he "was retained to determine whether the standard of care was met in the care and treatment of Karla Ridgeway as it relates to Dr. Karandikar and Mountain View Hospital [sic]."  However, the designation, as well as Dr. Poffenbarger's report, are riddled with impermissible legal opinions, on which Dr. Poffenbarger is not qualified to opine, and should be stricken, and Plaintiff should be precluded from

presenting any testimony by Dr. Poffenbarger, or any of her other designated witnesses, as to these legal conclusions.  (Doc 44 at 4-10; Doc. 44-7 at 4-18)  Attached hereto are the designation and report with Defendants' proposed strikes.

4.       There is no indication in any of the information provided by Plaintiff or Dr. Poffenbarger that he has had any legal training or education or otherwise has any specialized legal knowledge, skill or experience in order to expertly opine as to the legal negligence of either of the Defendants or whether Dr. Karandikar engaged in willful and wanton conduct.  Rather, it appears from Dr. Poffenbarger's own statement in his report that the extent of his legal knowledge was derived from his review the "Wyoming jury instruction relating to willful and wanton misconduct"—which presumably refers to the Wyoming civil pattern jury instructions— along with some unspecified definition of negligence, and he gives his "opinions with that standard, as well as the standard of care for ordinary negligence, in mind."[1]  (Doc. 44-7 at 3.) This goes well beyond Plaintiff's stated purpose for Dr. Poffenbarger's testimony regarding the standard of her medical care and treatment.

5.       It is Plaintiff's burden to show that this testimony is admissible.  *Conroy v. Vilsack*, 707 F.3d 1163, 1168 (10th Cir. 2013).  In order to do so, Plaintiff must first demonstrate that the witness has the requisite "knowledge, skill, experience, training, or education" as described in F.R.E. 702, which she has clearly failed to do.  Moreover, the proposed expert testimony must be "both reliable and relevant, in that it will assist the trier of fact[.]"  *Conroy*, 707 F.3d at 1168. Because Dr. Poffenbarger does not have the requisite legal expertise, he is neither qualified nor has the foundation, to render such an opinion, and the testimony is irrelevant as it

---

[1] Dr. Poffenbarger persists in invading the province of the jury by making comments in his report on Dr. Karandikar's credibility in comparing the operative report to Dr. Karandikar's deposition testimony.  (Doc. 44-7 at 9-10, 14).  This, too, is inappropriate as it is the jury's responsibility to reconcile any perceived differences between statements made by witnesses.  Dr. Poffenbarger may properly consider potentially conflicting statements in formulating his opinion, but testimony as to his opinion on another witness's credibility should not be admitted.

does not assist the jury in its duties; rather it impermissibly directs the jury as to conclusions of law.

6.     First, one does not simply become an expert after having studied a single sentence defining a specific and complex legal principle, and as such is unqualified to opine on the matter. Courts have routinely recognized that it is not proper for a proposed expert to "have developed their opinions expressly for purposes of testifying." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995).

7.     Second, offering an opinion that goes to the ultimate question law unacceptably invades the province of the jury. While it is recognized that a *qualified* expert may testify as to the facts upon which his or her opinion are based, it is well-established that the witness may not provide legal conclusions. "Testimony that articulates the ultimate principles of law governing the deliberations of the jury" essentially directs the jury to a verdict "rather than assisting the jury's understanding and weighing of the evidence." *Sprecht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988).

8.     Finally, such an opinion is inadmissible pursuant to the balancing test set forth in F.R.E. 403 because it has no probative value that can substantially outweigh the unquestionable and undue prejudice to Defendants. As such, Plaintiff should not be allowed to present any witness testimony, expert or lay, referencing jury instructions, legal authority, or legal principles or conclusions, and any opinion derived therefrom should be stricken from the designations and reports.

### Impermissible Opinions Regarding Credentialing and Privileging

9.      In addition to repeated, unqualified comments on the law, Dr. Poffenbarger further opines as to matters of Dr. Karandikar's privileges and credentials to practice medicine at MVRH and the hospital's negligence in granting such. (Doc. 44-7 at 7-8, 17.) Again, there is no

indication in any of the information provided to Defendants that Dr. Poffenbarger has the requisite expertise in the area of hospital privileging and credentialing in order to opine as to such matters. Because Dr. Poffenbarger's opinions relating to Dr. Karandikar's credentials and privileges to practice at MVRH are outside the scope of his expertise, they are neither reliable nor relevant as they do not assist the trier of fact in the execution of its duties. *Conroy*, 707 F.3d at 1168.

10.     Moreover, testimony to this effect is highly prejudicial to a defendant where negligence has not been established and has no legitimate probative value. F.R.E. 403. Because of this grave imbalance between prejudice and probative value, even if Dr. Poffenbarger, or any other witness offered by Plaintiff, were qualified to provide such an opinion, no evidence should be presented to the jury unless and until the jury makes a finding of negligence on the part of Dr. Karandikar. In such circumstances, a bifurcated trial is the most reliable way to ensure unduly prejudicial information is not considered by the jury for an improper purpose. *See Willis v. Bender*, 596 F.3d 1244, 1260 (10th Cir. 2010).

## Wyoming Board of Medicine Consent Decrees

11.     Included in the materials Plaintiff provided to her proposed expert witnesses for their review were copies of consent decrees Dr. Karandikar entered into with the Wyoming Board of Medicine in 2015 and 2018. (Docs. 44, 44-7, 44-11.) These consent decrees relate to disciplinary proceedings that in no way involved the care or treatment of Plaintiff nor do the decrees go to any issue properly plead and presently before the Court. Because they are irrelevant to the present proceedings and are inadmissible at trial, they should not have been considered by Plaintiff's designated experts in formulating their expert opinions and should be stricken. Moreover, Plaintiff should be precluded from eliciting any testimony related to the consent decrees or any complaints made to the Wyoming Board of Medicine against Dr.

Karandikar as that information is not probative of the issues to be decided by the jury and the risk of prejudice in the jury to hearing such evidence is extreme and unwarranted.

12.     Often, the facts upon which an expert relies in order to formulate an opinion are admissible, if not for substantive purposes, then to allow the jury to evaluate the voracity of the expert's testimony.   F.R.E. 703. This includes instances where the evidence is not otherwise admissible.  *Id.*   However, an expert witness may not in all circumstances testify as to otherwise inadmissible evidence simply because he or she relied on it to form an expert opinion.   The Advisory Committee Notes to the 2000 amendments to Rule 703 emphasize:

> [W]hen an expert reasonably relies on inadmissible information to form an opinion or inference, the underlying information is not admissible simply because the opinion or inference is admitted.
>
> * * *
>
> The information may be disclosed to the jury, upon objection, only if the trial court finds that the probative value of the information in assisting the jury to evaluate the expert's opinion substantially outweighs its prejudicial effect.

13.     Disciplinary matters adjudicated with the consent of the Licensee by a licensing board or other litigation for malpractice is unduly prejudicial and any probative value to the jury in evaluating the opinion of the expert does not substantially outweigh the risk of prejudice to a defendant; therefore, it should not only be excluded at trial, but it is also unreasonable for the expert to rely on it in the first instance.   The Tenth Circuit Court of Appeals, in addressing issues related to informed consent, expressly acknowledged the undue prejudicial effect of such evidence in noting "a real concern the jury will use evidence . . . such as a physician's lack of experience and litigation history, to improperly infer negligent treatment," and will use " 'prior bad act' evidence normally excluded under Rule 404(b) of the Federal Rules of Evidence" to establish negligence. *Willis*, 596 F.3d at 1260.

14.     This Court is undoubtedly well-versed in the language and principles of F.R.E. 404(b), which excludes evidence of prior acts that tend to imply that a defendant's actions in the case at bar were in conformity with his or her actions on previous occasions.   The Rule reads, '[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." F.R.E. 404(b)(1).  Rather, such prior acts may only be permitted for a legitimate purpose such as to establish "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  F.R.E. 404(b)(2).

15.     Plaintiff has not shown how the use of the 2015 or 2018 consent decrees does not run afoul of F.R.E. 404(b).   Rather, she is attempting to circumvent the purpose of the rule by providing such prejudicial, inadmissible information to her expert witnesses in order to elicit testimony and attempt to establish that Dr. Karandikar somehow acted in Plaintiff's case in conformity with actions that were subject to disciplinary sanctions by the Wyoming Board of Medicine.  This is a patently abusive use of expert witnesses, and this Court should not permit such behavior.   Accordingly, Defendants request this Court strike any references in the designations and expert reports that refer to the consent decrees, instruct Plaintff that her experts shall not rely in any way on that information in forming their opinions, and preclude any references at trial to prior litigation or disciplinary measures taken by the Wyoming Board.

## **Informed Consent**

16.     In the expert witness designations it appears as though Plaintiff intends to attempt to establish that she did not provide informed consent to undergo the procedure to remove the cyst in her brain on the basis that Dr. Karandikar did not advise her as to his experience in removing colloid cysts or in the use of the neuro-endoscopic instrument.  Importantly, this type of claim was not presented to the Wyoming Medical Review Panel as required by Wyo. Stat.

Ann. § 9-2-1519 and has not been pled to this Court in either her original complaint or her amended complaint.

17.     Although there is no Wyoming state court precedent or law that addresses informed consent in this context, the Tenth Circuit Court of Appeals has reviewed similar cases in light of the general rule in Wyoming that a "physician is required to disclose only such risks that a reasonable practitioner of like training would have disclosed in the same or similar circumstances." *Roybal v. Bell*, 778 P.2d 108, 112 (Wyo. 1989).  The Tenth Circuit found that based on Wyoming's application, "a claim under Wyoming's informed consent law requires either (1) a misrepresentation concerning the risks of a proposed treatment or procedure or (2) a failure to voluntarily disclose the risks of a proposed treatment or procedure." *Willis*, 596 F.3d at 1255.  Further, a physician's obligations to disclose information that are "physician-specific in nature" such as "experience, litigation history, licensure problems and having consulted with" other physicians likely are not required to be voluntarily disclosed to patients.  *Id*.  The court found that because Wyoming's standard is based on what "a reasonable physician with like training would have disclosed in the same or similar circumstances" is different than the reasonable patient standard utilized in other states, which is "whether a reasonable person in the patient's position would consider the information material to his decision as to whether to agree to allow the physician to perform the surgery upon him."  *Id*. at 1256.  The court noted that by doing so, "[i]n theory, the physician's own health, financial situation, even medical school grades, could be considered material facts a patient would want to consider in consenting to treatment by that physician."  *Id*. (internal citations and quotation marks omitted.)

18.     That said, in the event that a patient specifically requests information that is physician-specific in nature—experience perorming a particular procedure, board certification, etc.—then the physician must answer truthfully.  *Id*. at 1259-60.  However, Plaintiff has not alleged that she

inquired as to Dr. Karandikar's experience in colloid cyst removal or his familiarity with the equipment he used to do so, nor have any of her experts indicated they were informed of such inquiries or that Dr. Karandikar in any way affirmatively misrepresented his experience, or that they utilized such information in formulating their expert opinions.  As such, because it has not been pled and because no credible evidence exists that Dr. Karandikar misrepresented anything to Plaintiff, her experts should not be allowed to testify in this regard.  Moreover, any references to a lack of informed consent should be stricken from Plaintiff's designations and expert reports.

### Conclusion

19.    Significant portions of Dr. Poffenbarger's report and proposed testimony is impermissible, and Plaintiff should not be permitted to elicit testimony relating to any legal inferences or conclusions he has drawn relating to the credentials and privileges Dr. Karandikar held at MVRH or MVRH's responsibilities relating thereto, referencing any complaints to or disciplinary measures taken by the Wyoming Board of Medicine, or with respect to whether Plaintiff gave her informed consent to the colloid cyst procedure.  Dr. Poffenbarger does not have the required expertise and knowledge in order to render such opinions, and even if he did, much of it is not admissible because it was either not appropriately pled and is now time barred, violates the province of the jury, or lacks sufficient probative value to overcome the substantial prejudice it would cause Defendants.

20.    Moreover, with respect to the Plaintiff's remaining experts, for these same reasons they too should not be permitted to comment on any lack of informed consent, Dr. Karandikar's privileges and credentials at MVRH, or action taken by the Wyoming Board of Medicine. Finally, any references to these matters contained within Plaintiff's expert witness designations or the expert reports themselves should be stricken from the record.  Accordingly, Defendants respectfully ask for this Court's order granting the same.

DATED this 5th day of June 2019.

    /s/ CORINNE E. RUTLEDGE

Corinne E. Rutledge, #5-2480
J. Kent Rutledge, #5-1392
Meri V. Geringer, #6-3808
Whitney D. Boyd, #7-6080
LATHROP & RUTLEDGE, P.C.
1920 Thomes Ave., Suite 500
P.O. Box 4068
Cheyenne, WY 82003
(307) 632-0554
(307) 635-4502 (facsimile)


    /s/ TIMOTHY M. STUBSON

Timothy M. Stubson, #6-3144
Amanda Hunkins Newton #6-3460
CROWLEY FLECK, P.L.L.P.
111 W. 2nd Street, Ste. 220
Casper, WY 82601
307-265-2279
307-265-2307 (facsimile)


## CERTIFICATE OF SERVICE


    The undersigned certifies that a true and correct copy of the above and foregoing was served the following parties to this action pursuant to the Federal Rules of Civil procedure on this 5th day of June 2019, and that copies were served via CM/ECF on the following:

Diana Rhodes
Traci Rivinus
Rhodes Law Firm, LLC
2015 Warren Avenue
Cheyenne, WY 82001
diana@drhodeslaw.com
traci@drhodeslaw.com
*Attorneys for Plaintiff*

Isobel Thomas
Jennifer Keel
THOMAS KEEL & LAIRD, LLC
50 S. Steele St., Suite 450
Denver, CO 80209
ithomas@thomaskeel.com
jkeel@thomaskeel.com
*Attorneys for Plaintiff*


    /s/ LATHROP & RUTLEDGE, P.C.

LATHROP & RUTLEDGE, P.C.